RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
Tamika Hardy, Esq.

*Attorneys for HSC MANAGEMENT CORP.,
DAVID PEREZ, 167 WEST 133RD STREET HDFC,
and RICARDO GRANT*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: Aug. 30, 2018, 10:00 AM
Objections Due: Aug. 23, 2018, 4:00 PM

---------------------------------------------------------------x
In re:

167 West 133rd Street Housing Development
Fund Corp.

Chapter 11

Case No. 18-12043-jlg

Debtor.
---------------------------------------------------------------x

## MOTION TO DISMISS CHAPTER 11 CASE
## UNDER BANKRUPTCY CODE §1112(b)(1) & §105

TO THE HONORABLE JAMES L. GARRITY, JR.,
UNITED STATES BANKRUPTCY JUDGE:

Rivkin Radler LLP, counsel to HSC Management Corp. ("HSC"), David Perez ("Mr. Perez"), 167 West 133rd Street, HDFC ("167 West") and Ricardo Grant ("Mr. Grant") (collectively, the "Movants"), as and for the Movants' motion (the "Motion") for an order dismissing the Debtor's Chapter 11 case pursuant to 28 U.S.C. §1112(b) and §105, respectfully states as follows:

### INTRODUCTION

1. This Court should dismiss this Chapter 11 case as an unauthorized, bad faith bankruptcy filing for the following reasons:

(i) this is an impermissible *pro se* corporate Chapter 11 filing;

(ii) Judith E. Smith ("Smith"), who signed the Debtor's Chapter 11 Petition purportedly on behalf of the Debtor, filed this bankruptcy case to collaterally attack a June 14, 2018 preliminary injunction issued by the Supreme Court of the State of New York, New York County (Hon. Nancy M. Bannon), which enjoined and restrained Smith from, *inter alia,* interfering with the management of the Debtor's premises located at 167 West 133rd Street, New York, New York (the "Premises" or "Building"), encumbering the Premises, and interfering with the Movants' efforts and attempts to market and sell shares in vacant apartments at the Premises;

(iii) Smith, who signed the Debtor's Chapter 11 Petition purportedly on behalf of the Debtor, did not have the authority to sign the Petition or file this case because she is not a board member of the Debtor as a result of her tendering her resignation on February 2, 2016 and her automatic termination from the Board under Section 5 of the Debtor's By-Laws on account of her falling more than two months behind in payment of her maintenance charges;

(iv) the bankruptcy filing violates the provisions of the By-Laws of the Debtor because the purported Corporate Resolutions filed with the petition make clear that the filing was not: a) made with the approval of the Debtor's Board; or b) signed by two officers, including the President or the Vice President and the Secretary or Treasurer of the Debtor;

(v) Smith is using this bankruptcy filing and this Court to advance her own personal agenda and obtain a tactical advantage in a two party dispute between her and the Board pending in the State Court; and

(vi) The Debtor has failed to file its petition schedules by July 16, 2018, as required by the Court (see ECF docket entry on July 3, 2018).

**BACKGROUND**

2. Sometime prior to May 25, 1978, ownership of the Building was transferred to the City of New York (the "City") as a result of an action to foreclose on certain tax liens owned and held by the City. Affidavit of David Perez sworn to on September 13, 2017 ("2017 Perez Aff."), ¶4.

3. In or around December 2000, the Building was converted to a co-op and sold to 167 West, a New York Housing Fund corporation formed pursuant to Article XI of the Private Housing Finance Law of the State Of New York for the purpose of allowing eligible tenants to purchase shares and became shareholders of 167 West. Shares of 167 West were then sold to eligible tenants for $250.00. 2017 Perez Aff., ¶8.

4. By 2015, the Building fell into significant disrepair and was in financial trouble. In fact, the Building had not consistently paid its property taxes and water bills in several years and owed the City more than $200,000 in back taxes and water bill charges. 2017 Perez Aff., ¶9.

5. Because the Building was again in danger of being foreclosed upon, the City contacted Urban Homesteading Assistance Board ("UHAB") to help the shareholders get the management of the Building back on track. UHAB advised the Building to hire an experienced property manager to manage the Building, help stabilize its financial condition and address maintenance issues, and it recommended HSC, a Movant herein. 2017 Perez Aff., ¶10.

6. On or about November 23, 2015, 167 West entered into a property management agreement with HSC effective December 1, 2015. 167 West renewed its agreement with HSC in December 2016. HSC assigned Mr. Perez, a Movant herein, to handle the property management for the Building. 2017 Perez Aff., ¶11.

7. In December 2015, there were two remaining shareholders in the Building: Ricardo Grant ("Grant"), who is President of the Board and a Movant herein, and Smith, who was Secretary of the Board. It was immediately apparent to Perez and HSC that Ms. Smith had dispensed with all corporate formalities and, essentially, operated 167 West as a "one-person board" and unilaterally made all of the decisions for 167 West and the Building. 2017 Perez Aff., ¶12.

8. Despite repeated requests for 167 West's books and records and its bank account information, Ms. Smith refused to provide HSC with the books and records or 167 West's bank account information. 2017 Perez Aff., ¶13.

9. Perez and HSC have now come to suspect that Ms. Smith used some portion of 167 West's monies for her own personal use and, therefore, does not want to turn over the books and records because they will show her improper use of these funds. 2017 Perez Aff., ¶17.

10. Smith ultimately **resigned from the Board** on February 4, 2016 when she realized she could no longer unilaterally dictate how 167 West and the Building were managed. 2017 Perez Aff., ¶20 and Ex. G thereto.

11. Upon losing control of the management of the Building, Ms. Smith has been extremely difficult and uncooperative. Indeed, she seems intent upon engaging in a campaign against HSC for personal reasons without any regard for the best interest of the Building and 167 West's finances. 2017 Perez Aff., ¶19.

12. Six months after she resigned from the Board, Ms. Smith and David Smith ("Mr. Smith") filed a lawsuit in the Supreme Court of the State of New York, New York County ("State Court") claiming that she did not resign and, instead, that HSC, Grant and Perez were trying to wrongfully remove her from the Board and asking the Court to determine her status on the Board. 2017 Perez Aff., ¶21.

13. The State Court ultimately entered a temporary restraining order ("TRO") on September 14, 2017, temporarily restraining and enjoining Mr. Smith and Ms. Smith from:

(a) transferring, marketing, encumbering, selling or disposing of and/or entering any Contract of Sale for the Building; and

(b) interfering in the management of the Building, which includes but is not limited to changing the locks on apartments (other than the Smiths'), directing tenants not to pay rent to HSC, threatening or purporting to terminate the Building's employees or vendors such as the Building's superintendent and management company.

A true and complete copy of the TRO is annexed hereto as Ex. "A.".

14. On June 14, 2018, the State Court issued a Decision and Order (the "State Court Order") containing a preliminary injunction (the "Injunction") restraining and enjoining Mr. Smith and Ms. Smith from:

(a) transferring, marketing, encumbering, selling or disposing of, and/or entering any contract of sale for the premises located at, 167 West 133rd Street, New York, New York,

(b) interfering in the management of those premises, including but not limited to changing the locks on apartments therein other than their own, directing tenants and tenant shareholders not to pay rent or maintenance to H.S.C. Management Corp., and threatening or purporting to terminate the employment of employees hired by 167 W. 133rd St. HDFC or vendors such as the superintendent H.S.C. Management Corp., and

(c) interfering with the Movants' efforts and attempts to market and sell shares in 167 W. 133rd St. HDFC referable to vacant apartments at the premises.

A true and complete copy of the State Court Order is annexed hereto as Ex. "B."

15. The Injunction remains in effect.

## ARGUMENT

16. Section 1112(b)(1) of the Bankruptcy Code states that the Court may dismiss a bankruptcy case for cause:

> (b) (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

*11 U.S.C. § 1112(b)(1).*

17. Clearly, Smith filed this case after failing in her first chosen forum, the State Court, where she was a plaintiff. In fact, this Chapter 11 case was filed just over two weeks after the State Court issued the Injunction and finally ended her reign of chaos. This is an improper purpose for bankruptcy. *See e.g. In re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988):

> By filing on the eve of their answering date in the Texas Action and not before, the Debtors were able to use the automatic stay as a sword to avoid appearing in that lawsuit, and were able to shift the forum of their disputes with Movants to this Court, a forum they believed might be more favorable to their plight […] The Debtors do not deny that their Chapter 11 petitions were filed as a litigation tactic. […] Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternate judicial forum. As one court succinctly put it, 'the automatic stay was not intended to grant defendants a last-minute escape chute out of pending civil litigation.' […] In essence, these Chapter 11 cases involve little more than a private two-party dispute.

*Id.* at 259-260, 262. Internal citations omitted.

18. The Court should dismiss this bankruptcy case for cause because: a) it is an impermissible *pro se* corporate Chapter 11 filing; b) it seeks to collaterally attack the Injunction; c) Smith has no authority to file this bankruptcy case since she is not a board member of the Debtor as a result of her tendering her resignation and her subsequent automatic termination from the Board and it was not approved by two officers of the Board; d) it is a bad faith filing used by Smith to advance her own personal agenda and obtain a tactical advantage in a two party dispute between her and the Board pending in the State Court; and e) the Debtor has failed to file its petition schedules by July 16, 2018, as required by the Court.

### A. The Court Should Dismiss This Case As An Impermissible Pro Se Corporate Chapter 11 Filing.

19. According to the docket, no attorney represents the Debtor in connection with this bankruptcy filing. Thus, this case should be dismissed because it is an impermissible *pro se* Ch. 11 non-individual bankruptcy filing (see e.g. the Court's website at: http://www.nysb.uscourts.gov/filing-without-attorney ("Corporations and partnerships must have an attorney to file a bankruptcy case"); *See also Rowland v. Ca. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993)("It has been the law for the better part of two centuries…that a corporation may appear in federal courts only through licensed counsel."); *In re Valid Value Props., LLC*, 2017 Bankr. LEXIS 27, *10 (Bankr. S.D.N.Y 2017)(dismissing bankruptcy case where, *inter alia*, debtor's attorney did not participate in case after signing and filing petition; not for publication); *Brandaid Mktg. Corp. v. Biss*, 2009 U.S. App. LEXIS 6264, *4-5 (2d. Cir. 2009)(affirming District Court's rejection of application filed by *pro se* corporation seeking to extend time to file appeal). Additionally, as the Second Circuit has held:

> The principal rationale for ordinarily requiring representation by a licensed attorney is that the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities . . . . *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). This rationale "applies equally to all artificial entities." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Coun.*, 506 U.S. 194, 202, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993). Accordingly, a layperson may not represent a separate legal entity such as a corporation. *See, e.g.*, *Eagle Associates*, 926 F.2d at 1308; *Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam).

*Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d. Cir. 2007).

20. The Debtor's petition plainly states that it is a "Voluntary Petition for Non-Individuals" and that the Debtor is a corporation. Since the Debtor's Chapter 11 bankruptcy case was filed *pro se,* it must be dismissed.

### B. The Court Should Dismiss This Case Since It Is An Impermissible Collateral Attack Against the State Court's Injunction.

21.  Smith is plainly using this bankruptcy filing as a means to collaterally attack the State Court's June 14, 2018 Injunction, which restrained and enjoined Mr. Smith and Ms. Smith from:

(a) transferring, marketing, **encumbering**, selling or disposing of, and/or entering any contract of sale for **the premises located at 167 West 133rd Street, New York, New York**,

(b) **interfering in the management of those premises**, including but not limited to changing the locks on apartments therein other than their own, directing tenants and tenant shareholders not to pay rent or maintenance to H.S.C. Management Corp., and threatening or purporting to terminate the employment of employees hired by 167 W. 133rd St. HDFC or vendors such as the superintendent H.S.C. Management Corp., and

(c) **interfering with the Movants' efforts and attempts to market and sell shares** in 167 W. 133rd St. HDFC referable to vacant apartments at the premises.

(emphasis added).

22.  Knowing that the Injunction put an end to Smith's long campaign of chaos against the Board and her efforts to sell the Building (please see Perez Aff. for additional details of the history of Smith's alleged self-dealing and misappropriation of funds), Smith now uses this bankruptcy as a sword against the Movants and the State Court – which is clearly impermissible. *See e.g. Gouveia v. Tazbir*, 37 F.3d 295, 300-301 (7th Cir. 1994):

> The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code. *See Northwest Bank Worthington v. Ahlers,* 485 U.S. 197, 99 L. Ed. 2d 169, 108 S. Ct. 963 (1988). The powers granted to the bankruptcy court under § 105 are subject to the Full Faith and Credit Clause of the Constitution. *See* U.S. Const. Art IV, § 1.; *see also* 28 U.S.C. § 1738. The bankruptcy court must afford full faith and credit to a valid state court judgment to the same extent as the rendering state. *In re Holiday Interval, Inc.,* 114 Bankr. 177 (1989). […] We will not invoke § 105(a) under a general equitable power to set aside a valid, permanent injunction from an Indiana state court.

23. See also *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 335-336 (Bankr. S.D.N.Y. 2001): "It is an extremely common occurrence that a debtor in Chapter 11, 12 or 13, wishes to move a vitriolic matrimonial proceeding, mortgage foreclosure, or tort suit into the bankruptcy forum, and then attempt to utilize the bankruptcy forum as a sword - a new weapon in the arsenal of vitriol. Without exception, this Court does not permit such a tactic." (*citing In re Head*, 223 B.R. 648, 653 [Bankr. W.D.N.Y. 1998]).

24. Accordingly, this Court should dismiss this case under §1112(b)(1) since it impermissibly seeks to use bankruptcy as a sword against the Movants to collaterally attack the State Court's Injunction.

### C. Smith Has No Authority To File This Bankruptcy Petition Since She Is Not A Board Member Or Officer Of The Debtor.

25. Since Smith caused the Debtor's bankruptcy filing without authorization from the Debtor's Board, cause exists for this Court to dismiss the petition.

26. Authority to file a bankruptcy petition on behalf of an entity is governed by state law. *See Price v. Gurney*, 324 U.S. 100, 106 (1945); *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994) ("A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so, and the authorization must derive from state law"); *In re American Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) ("The authority to file a bankruptcy petition on behalf of a corporation must derive from state law.")

27. The Debtor is a New York Corporation organized under and governed by New York state law. New York state law establishes that a corporation is governed by the terms of its By-Laws. "The bylaws of the corporation constitute a contract between the shareholders and the corporation." *ALH Props. Ten v. 306-100th St. Owners Corp.*, 191 A.D.2d 1, 16, 600 N.Y.S.2d 443 (1st Dep't 1993), *modified by and aff'd by*, *ALH Properties Ten v. 306-100th St. Owners Corp.*, 86 N.Y.2d 643, 635 N.Y.S.2d 161 (1995) (citing *Procopio v. Fisher*, 83 A.D.2d 757, 758,

443 N.Y.S.2d 492 (4th Dep't 1981). "The parties' rights must be adjudicated according to the unambiguous terms thereof and the words and phrases therein must be given their plain meaning." *ALH Props. Ten*, 191 A.D.2d at 16. "The law is clear that all operative corporate and cooperative documents -- offering plan, certificate of incorporation, lease and bylaws, are inseparably joined in determining the relationship of shareholders/tenants to a cooperative" and shareholders are bound by all of them. *1326 Apartments Corp. v. Barbosa*, 147 Misc. 2d 264, 267, 555 N.Y.S.2d 560, 562 (Civ. Ct. New York Cnty. 1990) (citing *Fe Bland v. Two Trees Mgmt. Co.*, 66 N.Y.2d 556, 563, 498 N.Y.S.2d 336 (1985).

28. In order for the Debtor's Resolution of Board of Directors (as filed with the Petition) to be effective, it would need to be signed by two officers, since the By-laws state "Section 1. Authorized Signatures. With the prior authorization of the Board, all notes and contracts, including Proprietary Leases, shall be signed on behalf of the Corporation by two officers, including the President or the Vice President and by the Secretary or Treasurer…" See 2017 Perez Aff., Ex. "C." Clearly, the purported Resolutions filed with the Debtor's Petition do not contain the requisite two signatures.

29. Notwithstanding that there is only one of the two required signatures on the Resolution, the only signature it does contain is Smith's, which is of no force or effect because Smith is not a board member, having both resigned and been removed.

30. The relevant By-laws state: "Section 4. Resignation. Any Director may resign at any time by delivering a signed letter of resignation to the office of the Corporation. Such resignation shall take effect at the time specified in that letter, or if so specified, on the date the letter is delivered." 2017 Perez Aff., Ex. "C." Ms. Smith resigned from her position on the

Board on February 4, 2016 in an email.[1] See 2017 Perez Aff., Ex. "G," and State Court Order at page 5: "As shown in the correspondence from Judith Smith, she resigned her position as Secretary of the Board on February 4, 2016."[2]

31. Additionally, even if Ms. Smith did not resign, she still could not be deemed a member of the Board. Pursuant to Section 5 of 167 West's By-laws, "[t]he term of any Director who becomes more than two (2) months behind in payment of his or her maintenance charges ***shall be automatically terminated*** and a replacement shall be duly elected." See 2017 Perez Aff., ¶22 and Ex. "C" (Emphasis added). Ms. Smith has owed outstanding maintenance charges to 167 West for over one year, rendering her ineligible to serve on the Board. See Declaration of David Perez dated July 31, 2018 ("2018 Perez Decl.") and tenant ledger for Ms. Smith maintained by HSC outlining her maintenance charge arrearages attached thereto as Ex. "A". The State Court thus stated that it had been "established that, even if Judith Smith did not formally resign, as she contends in the complaint, she had already forfeited her position as secretary and member of the HDFC's board as of June 19, 2017 […]" and that the Movants demonstrated "that they are likely to succeed […] on their defense to the plaintiffs' claim that Judith Smith is the secretary of the board."[3]

32. The lack of authority to initiate a bankruptcy filing may constitute cause for dismissal. See *In re A-Z Elecs., LLC*, 350 B.R. 886, 891 (Bankr. D. Idaho 2006); *In re Real*

---

[1] It is well-established that an email can satisfy the requirements for a signed writing required by a contract, such as the By-laws in this case. *See e.g. Steven v. Publicis, S.A.*, 50 A.D.3d 253, 854 N.Y.S.2d 690 (1st Dep't 2008) ("The e-mails from plaintiff constitute 'signed writings' within the meaning of the statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the contents"); *Rhodium Special Opportunity Fund, LLC v. Life Trading Holdco, LLC*, 2014 N.Y. Misc. LEXIS 1525, 2014 N.Y. Slip Op. 30840(U) (Sup. Ct. New York Cnty. March 31, 2014) ("Courts in New York have held that an email may constitute a writing for the purpose of the statute of frauds."); *Gotham Pers. LLC v. Metro N.Y. Balloon & Music Festival Inc.*, 2013 N.Y. Misc. LEXIS 899 *9, 2013 N.Y. Slip Op. 30459(U) (Sup. Ct. Suffolk Cnty. Feb. 28, 2013) ("E-mails which contain the printed name of the sender at the end, constitutes a signed writing, signifying the intent to authenticate the contents thereof"); *Al-Bawaba.com, Inc. v. Nstein Techs. Corp.*, 19 Misc. 3d 1125(A), 1125A, 862 N.Y.S.2d 812, 812 (Sup. Ct. Kings Cnty. Dec. 18, 2009) ("The sender manifested his intention to authenticate the email for purposes of the Statute of Frauds by typing his name, 'Denis,' at the bottom of the January 12, 2007 email.")

[2] While the State Court noted that Smith had resigned, it held off on making a final determination. See State Court Order at page 7.

[3] Note footnote 2.

*Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005); *In re J&J Prop. Holdings, LLC*, 2004 Bankr. LEXIS 2543, 2004 WL 5463804 at *2 (Bankr. W.D.N.C. Jan. 20, 2004). Other courts seemingly rest dismissal not on a showing of cause but solely on the absence of authority. *In re Comscape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010); *See also, In re Southern Elegant Homes*, Inc., 2009 Bankr. LEXIS 1478, 2009 WL 1639745 at *1 (Bankr. E.D.N.C. June 9, 2009); *In re N2N Commerce, Inc.,* 405 B.R. 34, 41 (Bankr. D. Mass. 2009*); In re Telluride Income Growth Ltd. P'ship*, 311 B.R. 585, 591 (Bankr. D. Colo. 2004); *Kelly v. Elgins Paint & Body Shop* 249 B.R. 110, 112 (Bankr. D. S.C. 2000).

33. Many of these cases involve requests for dismissal by a shareholder. *In re Carolina Park Assocs.*, LLC, 430 B.R. 744, 748 (Bankr. D.S.C. 2010). *See also, e.g.*, *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D. Tex. 2006) (chapter 11 petition that one member of an LLC had unilaterally filed on the LLC's behalf, contrary to provision in operating agreement that precluded members of LLC from filing bankruptcy petition on its behalf without unanimous consent of all of its members, had to be dismissed); *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed."), *In re Green Power Kenansville, LLC*, No. 04-08384-8-JRL, 2004 Bankr. LEXIS 2541 (E.D.N.C. Nov. 18, 2004) (in granting a motion to dismiss, court looked to state law and the LLC's operating agreement to determine that an LLC's bankruptcy petition was not properly authorized); *In re DB Capital Holdings, LLC*, No. 10-046, 2010 WL 4925811, at *2 (10th Cir. B.A.P. Dec. 6, 2010) ("A bankruptcy case filed on behalf of an entity without authority under state law to act for that entity is improper and must be dismissed.").

34. Here, the Board, which has sole management authority of the Debtor, neither authorized nor consented to the filing of the petition by the Debtor. Accordingly, the petition must be dismissed.

### D. This Case Must Be Dismissed Because It Is A Bad Faith Filing Used By Smith To Advance Her Own Personal Agenda And Obtain A Tactical Advantage In A Two Party Dispute Between Her And The Board.

35. The Debtor's bankruptcy filing was not just unauthorized, it was made in bad faith. "The standard in [the Second Circuit] is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Inwood Heights Hous. Dev. Fund Corp.*, 2011 Bankr. LEXIS 3251, 31-33 (Bankr. S.D.N.Y. Aug. 25, 2011); *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997); *See also In re Gen. Growth Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (following the standard articulated in *Kingston Square Assocs.*); *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 848 (E.D.N.Y. 1995). A finding of bad faith "requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly." *C-TC 9th Ave. P'ship v. Norton Co.*, 113 F.3d at 1312 (2d Cir., 1997).

36. Once the movant has established the existence of both subjective bad faith and objective futility, "a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good and sufficient reasons why the relief should not be granted.'" *Squires Motel, LLC v. Gance (In re Squires Motel, LLC)*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (quoting *In re Yukon Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)). This essentially means that the debtor must demonstrate the existence of "unusual circumstances" that establish that "dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1)-(2); see also *Squires Motel*, 426 B.R. at 34.

37. The Second Circuit in *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311, identified eight factors that are indicative of a bad faith bankruptcy filing:

> (1) The debtor has only one asset;
> (2) The debtor has few unsecured creditors, whose claims are small in relation to those of secured creditors;
> (3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which could be resolved in a pending state foreclosure action;
> (5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) The debtor has little or no cash flow;
> (7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
> (8) The debtor has no employees.

*Id.* (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. May 15, 1992)); *see also In re Project Orange Assocs.*, 432 B.R. 89, 113 (Bankr. S.D.N.Y. July 1, 2010) (applying the *C-TC 9th Ave. P'ship* factors).

38. All or nearly all the factors are met here, since: (1) the Debtor's sole asset is the building; (2) the Debtor has few, if any, general unsecured creditors, whose claims are small in relation to those of the City (owed not less than $224,886.43 for outstanding property taxes; see 2017 Perez Aff. at ¶30) and the New York City Water Department (owed not less than $58,337.32 for outstanding water charges; see *Id.*); (3) the Debtor's sole asset, while not the subject of a foreclosure action, is the subject of a litigation in the State Court and may be subject to foreclosure (see *Id.*) in the event Smith's nefarious actions are not curtailed; (4) the Debtor's financial condition is, in essence, a two party dispute between Smith and the Board in the State Court; (5) the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Board to enforce its rights since it was filed just over two weeks after the State Court Order issued the Injunction restraining and enjoining Smith's efforts to hijack the Debtor and sell its sole asset; (6) the Debtor has little or no cash flow other than the rents it collects; (7)

the Debtor, as a result of Smith's actions, has not been meeting its expenses including the payment of real estate taxes and water charges; and (8) the Debtor has no employees other than a part-time superintendent. 2018 Perez Decl., ¶6.

39. As a result, the Movants have shown Smith's subjective bad faith in filing this bankruptcy case and that the case is objectively futile since there was no corporate authority for its filing and Smith cannot make decisions for the Debtor as a debtor-in-possession. Accordingly, although "bad faith" is not enumerated under §1112(b), it is well settled that the filing of a petition in bad faith constitutes "cause" for dismissal or conversion of a case under Bankruptcy Code Section 1112(b). *In re Artisanal 2015*, LLC, 2017 Bankr. Lexis. 3813, *26 (Bankr. S.D.N.Y. 2017; Garrity, B.J.; internal citations omitted; not for publication).

40. Simply put, the Debtor's bankruptcy filing is frivolous and a Chapter 11 reorganization is impossible since the bankruptcy itself cannot be maintained without requisite board approval. Accordingly, cause exists for the Court to dismiss the case.

### *E. This Case Must Be Dismissed Because the Debtor has failed to file its petition schedules by July 16, 2018, as required by the Court.*

41. The *handwritten* corporate petition filed by the Debtor is beyond bare bones. Its 20 Largest Unsecured Creditors List and Local Rule 1007-2 Affidavit were both due at the time of the July 3, 2018 bankruptcy filing. Its Schedule A/B, Schedule D, Schedule E/F, Schedule G, Schedule H, Summary of Assets and Liabilities, Statement of Financial Affairs, and List of Equity Security Holders were all due on July 16, 2018. Though all of the incomplete filings were required to be filed by no later than July 16, 2018, none were filed when due. (See docket entry on July 3, 2018).

42. §1112(b)(4)(f) provides that cause for dismissal exists where there is the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or

by any rule applicable to a case under this chapter."[4] The Court should therefore dismiss this case because the Debtor has failed to comply with any of its filing and reporting requirements.

## NOTICE

43. Notice of this motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Debtor; (iii) all parties noticed by the Court in its July 7, 2018 Certificate of Notice at ECF no. 5 (because the Debtor did not file a list of its 20 largest creditors); and (iv) any other party that filed a Notice of Appearance in this case. The Movants submit that such notice is sufficient under the circumstances.

## CONCLUSION

44. Based on the totality of the circumstances surrounding the filing of this Chapter 11 case, it should be clear that this bankruptcy filing was unauthorized, made in bad faith, and was made for an improper purpose. Accordingly, cause has been shown for this Court to dismiss the Debtor's Chapter 11 case.

45. The Court should not convert this case to Chapter 7 since doing so would only reward Smith for using this unauthorized bankruptcy as a sword to frustrate the State Court's Injunction.[5]

---

[4] §1112(e) further provides that "the court, on request of the United States trustee, may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate if the debtor in a voluntary case fails to file, within fifteen days after the filing of the petition commencing such case or such additional time as the court may allow, the information required by paragraph (1) of section 521(a), including a list containing the names and addresses of the holders of the twenty largest unsecured claims (or of all unsecured claims if there are fewer than twenty unsecured claims), and the approximate dollar amounts of each of such claims."

[5] Movants respectfully reserve all of their rights to seek redress and to ameliorate the damages caused by the improper filing of the Debtor's bankruptcy case.

WHEREFORE, the Movants respectfully request entry of an order dismissing the case pursuant to 11 U.S.C. §1112(b) and §105, and for such other and further relief as the Court may deem just and proper.

Dated: Uniondale, New York
　　　　July 31, 2018

           RIVKIN RADLER LLP
           *Attorneys for the Movants*

      By: /s/ Matthew V. Spero
         Stuart I. Gordon
         Matthew V. Spero
         Tamika Hardy
         926 RXR Plaza
         Uniondale, New York  11556-0926
         (516) 357-3000

4059571 v3