NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                                  :
                                                        :
167 West 133rd                                          :   Case No. 18-12043 (JLG)
Street Housing Development Fund Corp.,                   :   Chapter 11
                                                        :
                                          Debtor.        :
                                                        :
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER GRANTING
## MOTION TO DISMISS CHAPTER 11 CASE

**A P P E A R A N C E S:**

RIVKIN RADLER LLP
*Attorneys for HSC Management Corp., David Perez, and Ricardo Grant*
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
926 RXR Plaza
Uniondale, NY 11556

Andrew Citron, Esq.
*Attorney for Judith Smith*
30 Wall Street
8th Floor
New York, New York 10005

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction

167 West 133rd Street HDFC is the debtor herein (the "Debtor").  Its sole asset is a

building located at 167 West 133rd Street, New York, New York (the "Building" or "Property"),

that is being managed by HSC Management Corp. ("HSC").  Judith Smith and her brother David

Smith reside in the Building.  In August 2016, the Smiths sued the Debtor, HSC, David Perez, a

property manager at HSC ("Perez"), and Ricardo Grant ("Grant") a shareholder of the Debtor

and the President of the Debtor's Board of Directors (the "Board"), in New York State Supreme

Court, New York County (the "State Court").  In that action, they are seeking an order declaring

that they are Board members, and that Ms. Smith is the Secretary-Treasurer of the Board.  In

June 2018, the State Court preliminarily enjoined the Smiths from interfering with the

management of the Building.  In doing so, the court found that Ms. Smith is not a member of the

Board.  That action is pending.

Ms. Smith has brought the governance dispute to this Court.  On July 2, 2018 (the

"Petition Date"), she filed a bare bones chapter 11 petition for reorganization (the "Petition") on

behalf of the Debtor.  In the Petition, she claims that she is the Debtor's Secretary-Treasurer and

that the Board authorized her actions.  She executed the Board resolution authorizing the Debtor

to file this case in her purported capacity as "Secretary-Treasurer."  The Debtor is acting *pro se*.

The matter before the Court is the motion filed by HSC, Perez and Grant (together, the

"Movants") to dismiss the case pursuant to §§ 105(a) and 1112(b) of the Bankruptcy Code (the

"Motion").[1]  The City of New York (the "City") is the Debtor's largest creditor in what is, from a

---

[1]    *See* Motion to Dismiss Chapter 11 Case Under Bankruptcy Code §§ 1112(b)(1) & (2) [ECF No. 9].  In support
thereof, the Movants principally rely on the Affidavit of David Perez, sworn to September 13, 2017 (the "2017 Perez
Aff."), and the Declaration of David Perez dated July 31, 2018.  Both are annexed to the Motion.

The Movants also filed (i) a Reply to Declaration of Judith Smith In Opposition to Motion to Dismiss Chapter 11
Case [ECF No. 19] (the "Reply"), and (ii) Declaration of David Perez In Support of the Movants' Reply to Ms.
Smith's Opposition to the Motion [ECF No. 20] (the "Reply Decl.").

financial perspective, essentially a two-party case.  It holds a Foreclosure Judgment (defined below) against the Building.  To date, the Debtor has made no attempt to redeem the Building, and its Mandatory Period (defined below) to do so has expired.  The City supports the Motion and urges the Court to dismiss the case.[2]  Ms. Smith opposes the Motion.[3]

As explained below, the Movants have established "cause" for relief under § 1112(b) of the Bankruptcy Code.  The Court finds that it is in the best interests of the Debtor's estate and creditors that this case be dismissed.  Accordingly, for the reasons set forth herein, the Motion is GRANTED, and the case is dismissed.[4]

<u>Jurisdiction</u>

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

<u>Facts</u>

---

[2]    *See* Statement of the City of New York with Respect to Motions to Dismiss Case [ECF No. 21] (the "NYC Stmt.").

[3]    *See* Declaration of Judith Smith [ECF No. 17] (the "Opp'n"), and Declaration of Andrew Citron [ECF No. 18] (the "Citron Decl.").

[4]    This is not the only motion to dismiss that has been filed against the Debtor.   In the more than two and one half months since the Petition Date, the Debtor has not retained counsel, and has not filed any of the schedules and other documents called for under the Federal Rules of Bankruptcy Procedure, this Court's Local Rules of Bankruptcy Procedure, and § 521 of the Bankruptcy Code.  In response to those deficiencies, the Office of the United States Trustee filed a motion to dismiss this case pursuant to § 1112(b) of the Bankruptcy Code (the "U.S Trustee Motion").  *See* Motion for An Order to Dismiss this Chapter 11 Case Or, Alternatively, Convert to a Case Under Chapter 7 [ECF No. 14]; the Declaration of Susan A. Arbeit In Support of the United States Trustee's Motion for An Order to Dismiss this Chapter 11 Case Or, Alternatively, Convert to a Case Under Chapter 7 [ECF No. 14-1]; and a copy of the search results in the NYS Department of State, Division of Corporations database for "167 WEST 133RD STREET HOUSING DEVELOPMENT FUND CORPORATION" [ECF No. 14-2].  Because the Court has determined that it will dismiss this case, it denies the U.S. Trustee Motion as moot.

The Debtor is a Housing Development Finance Corporation ("HDFC") organized under §
573 of the Private Housing Finance Law of the State of New York ("PHFL") exclusively for the
purpose of developing a housing project for persons of low income. NYC Stmt. ¶ 1; *see also*
2017 Perez Aff. ¶ 8 (noting that the Debtor is organized under Article XI (§§ 570-582) of the
PHFL. The New York City Department of Housing Preservation and Development ("HPD") is
responsible for all City-owned buildings and, among other things, is tasked with overseeing
HDFC on behalf of the City. *See* New York City Housing Preservation & Development:
https://www1.nyc.gov/site/hpd/about/about-us.page (last visited September 25, 2018). Sometime
in the late 1970s, the City acquired title to the Building pursuant to an *in rem* foreclosure action.
NYC Stmt. ¶ 2. In 2001, pursuant to the provisions of the PHFL, the City transferred title to the
Building to the Debtor. *Id.*[5] The Building is the Debtor's sole asset.

By 2015, the Building had fallen into disrepair and the Debtor was experiencing
significant financial problems. 2017 Perez Aff. ¶ 9. Indeed, as of December 2015, the Building
had unpaid real property tax and water bills totaling in excess of $200,000. *Id.* At that time, the

---

[5]    The Tenant Interim Lease Apartment Purchase Program ("TIL") is one of several programs that HPD sponsors
to encourage the rehabilitation and sale of City-owned residential buildings. Under the TIL, eligible tenant
associations in occupied City-owned buildings with three or more units are presented with the opportunity to
develop low-income tenant-owned cooperatives. 2017 Perez Aff. ¶ 5. Under TIL, the tenants of a building form a
tenant association and sign an 11-month "interim lease" with the City, which gives the tenant association the
authority to collect rents and manage the building. As a part of the program, HPD assigns a HPD coordinator and a
coordinator from Urban Homesteading Assistance Board ("UHAB") to help the tenant association meet TIL
program requirements. *Id.* ¶ 6. During the "interim lease" period, the tenants perform any necessary repair work to
the Building, while they receive training in matters relating to property management. Once the tenant training and
any necessary building repairs are completed, HPD sells the building to the tenant owned cooperative corporation.
The purchasing tenants own the corporation and the corporation owns the building. *Id.* Every tenant who lives in
the building and pays rent to the tenant association is automatically a member of the association. Only tenants who
are listed on the building's rent roll at the time of the co-op conversion and are current on their rent are eligible to
purchases shares in the building. *Id.* ¶ 7.

Here, the tenants of the Building participated in the TIL program. To that end, they formed a tenant association and
repaired and operated the Building pursuant to an 11-month interim lease with the City. After the tenants
successfully completed the "interim lease" period of TIL, the Building was converted to a co-op and sold to the
Debtor. *Id.* ¶ 8. Thereafter, shares in the Debtor were sold to eligible tenants for $250. *Id.*

Urban Homesteading Assistance Board (the "UHAB") urged the Debtor to retain an experienced property manager to manage the Building. *Id*. ¶ 10. At its suggestion, on or about November 23, 2015, the Debtor entered into a property management agreement with HSC, effective December 1, 2015. *Id*. ¶¶ 10-11. In December 2016, the Debtor renewed its agreement with HSC. *Id*. ¶ 11. HSC understands that until December 2015, Ms. Smith handled all management responsibilities for the Building, including, without limitation, collecting rent, paying bills and managing the Debtor's bank account. *Id*. ¶ 12.

Since its appointment, HSC has been at odds with Ms. Smith over matters relating to the governance of the Debtor and the management of the Building. HSC states that Ms. Smith:

(i) Refused to turn over the Debtor's books, records, and bank information to HSC, forcing HSC to resort to opening a new bank account for the Debtor, and approaching each tenant in the building in December 2015 to recreate the rent roll. *Id.* ¶¶ 13-14.

(ii) Refused to turn over the Debtor's operating funds to HSC to enable it to make a payment to the City on account of the tax arrears. *Id.* ¶ 16.

(iii) Refused to provide HSC with any historical financial data or accounting records regarding the Debtor and /or the Building. *Id.* ¶ 17.

(iv) Refused to cooperate with HSC and the Urban Homesteading Assistance Board to create a plan to get the Debtor back track financially. *Id.* ¶ 20.

The dispute between HSC and Ms. Smith crystalized in August 2016, when the Smiths sued the Debtor and the Movants in State Court (the "State Court Action"). *See id., Ex. H (the* "Complaint"). At its core, that action seeks to resolve a corporate governance dispute among the Smiths and the Debtor. Specifically, in the Complaint, the Smiths seek a declaration that they are members of the Board, and that Ms. Smith is the Board's Secretary-Treasurer. Compl. at 4-

- 4 -

5.  HSC states that in the period since the commencement of the State Court Action, and notwithstanding its appointment as property manager, Ms. Smith has interfered with the operation of the Building.  To that end, it contends that she has:

> (i)     attempted to terminate HSC's contract, and the contract of the Building's superintendent;

> (ii)    changed the locks on vacant apartments and blocked attempts to market and sell those apartments;

> (iii)   advised tenants that HSC was no longer managing the Building, and told them not to pay rent to HSC; and

> (iv)    otherwise created a chaotic and unproductive environment in the Building in protest of HSC's retention as manager.

2017 Perez Aff. ¶ 23.

In August 2017, HSC discovered that in July 2017, Ms. Smith, purportedly acting on behalf of the Debtor, entered into a contract (the "July Contract") to sell the Building to West 133rd Acquisition Group LLC for $1.5 million.  *Id.*, Ex. L.  Both the Debtor's Certificate of Incorporation, and the deed conveying the Building to the Debtor, bar the Debtor from selling the Building without first obtaining HPD's permission.  *See id.*, Ex. C (the "Certificate of Incorporation") at §§ 10(B)-(C); NYC Stmt. ¶ 2, Ex. A (Deed) at 3.  It is undisputed that Ms. Smith neither sought nor obtained HPD's permission before executing the July Contract on behalf of the Debtor.  HSC promptly challenged Ms. Smith's right to proceed with the sale, and on August 22, 2017, sent Ms. Smith a cease and desist letter.  *See* 2017 Perez Aff., Ex. M (Cease & Desist Letter).

Thereafter, HSC sought relief against Ms. Smith in the State Court Action.  Specifically, on September 14, 2017, at the request of HSC, the State Court issued an Order to Show Cause

- 5 -

(the "Show Cause Order")[6] with a temporary restraining order, directing the Smiths to appear

and show cause why an order should not be made and entered:

> (i)    declaring the July Contract null and void as it is in violation of the covenants in the Debtor's Certificate of Incorporation,

> (ii)   preliminarily and permanently enjoining the Smiths from "transferring, marketing, encumbering, selling or disposing of and/or entering into a Contract of Sale for" the Building,

> (iii)  preliminarily and permanently enjoining the Smiths (or anyone acting on their behalf) from interfering with the management of the Building, and

> (iv)   permitting the defendants to market and sell the vacant units in the Building immediately, subject to the consent of Mr. Grant and Ms. Smith, which shall not be unreasonably withheld.

Show Cause Order, at 2.  The Order also temporarily enjoined and restrained the Smiths from:

> (a)  transferring, marketing, encumbering, selling or disposing of and/or entering any Contract of Sale for the Building; and

> (b)  interfering in the management of the Building, which includes but is not limited to changing the locks on apartments (other than the Smiths'), directing tenants not to pay rent to HSC, threatening or purporting to terminate the Building's employees or vendors such as the Building's superintendent and management company.

*See id.*  Neither Ms. Smith, nor her brother responded to the Show Cause Order, or otherwise

opposed the relief the Movants seek in State Court.

On June 14, 2018, the State Court issued a decision and order (the "State Court

Decision")[7] in which it declared the July Contract null and void.  In so ruling, the State Court

found that Ms. Smith lacked authority to act on behalf of the Debtor in connection with the

---

[6]    *See* Mot., Ex. A.

[7]    *See* Mot., Ex. B.

purported sale, because she was not a member of the Board when she executed the July Contract.

*Id.* at 4-5.  More specifically, the court found that correspondence showed that on February 4,

2016, Ms. Smith resigned her position as Secretary of the Board and, in any event, in accordance

with the Debtor's by-laws (the "By-Laws"),[8] as of June 19, 2017, Ms. Smith had forfeited her

Board membership by failing to pay her monthly maintenance fees.  *Id.* at 5-6.  The court also

found that Ms. Smith had not obtained the requisite consent for the sale and transfer of the

Building from HPD.  *Id.*  The State Court preliminarily enjoined the Smiths from taking any

action to market or sell the Building, interfere with the management of the Building, or interfere

with the Debtor's efforts to market and sell the vacant units.  *Id.* at 7.  To that end, the Order and

Decision provides, in relevant part, that the Smiths are enjoined and restrained during the

pendency of the action from:

- Transferring, marketing, encumbering, selling or disposing of, and/or entering any contract of sale for the premises located at, 167 West 133rd Street, New York, New York;

- Interfering in the management of those premises, including but not limited to changing the locks on apartments therein other than their own, directing tenants and tenant shareholders not to pay rent or maintenance to H.S.C. Management Corp., and threatening or purporting to terminate the employment of employees hired by 167 W. 133rd St. HDFC or vendors such as the superintendent H.S.C. Management Corp.; and

- Interfering with the Movants' efforts and attempts to market and sell shares in 167 W. 133rd St. HDFC referable to vacant apartments at the premises.

*Id.* at 10.

---

[8]    A copy of the By-Laws is annexed to the 2017 Perez Affidavit as part of Exhibit C.

Shortly after HSC assumed the management responsibilities for the Building, it determined that the Debtor had not paid the property taxes on the Building since November 20, 2019.  2017 Perez Aff. ¶ 15.  HSC advises that as of December 2015, the Debtor owed more than $150,000 in overdue property taxes.  *Id.*  As a result of delinquent real property taxes, in 2016, the Property was included in *In Rem Tax Foreclosure Action No. 51, Borough of Manhattan* (Sup. Ct. N.Y. Co. Index No. 580001/16), under § 11-412.1 of the *in rem* foreclosure laws of § 11-401 et seq. of the Administrative Code of the City of New York (the "Admin. Code").  NYC Stmt. ¶ 3.  Apparently, the Debtor did not respond to the foreclosure action, or attempt to redeem the Property either by paying its delinquent taxes or entering into an installment agreement with the City's Department of Finance pursuant to Admin. Code §§ 11-405 and 11-409.  On March 20, 2018, the court entered and filed a judgement of foreclosure (the "Foreclosure Judgment") in the action.  *Id.* ¶ 4.

On July 2, 2018, Ms. Smith filed this case.  In the Petition, she contends that she is the Debtor's Secretary-Treasurer and, as such, she is authorized to file the Petition on the Debtor's behalf.  As evidence of her authority to act for the Debtor, Ms. Smith included the following documents with the Petition:

- A "Resolution of Board of Directors" dated July 2, 2018 (the "Board Resolution") that purports to authorize the filing of a bankruptcy petition, and the appearance by Ms. Smith in the chapter 11 proceeding on behalf of the Debtor.  It is signed by Ms. Smith in the capacity of "Secretary-Treasurer of the Corporation."  Petition at 5.

- A "Corporate Ownership Statement" dated July 2, 2018 (the "Corporate Ownership Statement").  It identifies the Debtor's three shareholders as: Judith E. Smith 250 Shares; David Smith 250 Shares; and Ricardo A. Grant 250 Shares.  *See id.* at 6.

- 8 -

The Movants make a number of arguments in support of the Motion. First, they contend that this Court should dismiss the case because Ms. Smith filed it *pro se* (Mot. ¶¶ 19-20),[9] and because the Debtor has failed to file its bankruptcy schedules and statements, notwithstanding that this Court accorded it additional time to do so. *Id.* ¶¶ 41-42.[10] Although those defects provide grounds for granting the Movants relief under § 1112(b), both are easily remedied and can be remedied in this case. *See* Citron Decl. ¶ 6. Next, the Movants assert that the case should be dismissed because it amounts to a collateral attack on the preliminary injunction issued by the State Court. Mot. ¶¶ 21-24. The Court finds no merit to that contention.[11] Finally, they argue

---

[9]    It is well settled that "a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*." *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). *See also Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) (noting that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). The Debtor is a New York corporation. It filed the chapter 11 petition *pro se,* and has not filed an application to retain bankruptcy counsel. It is not merely, "impermissible" for a corporation to "file[] its petition *pro se*." *BSL Operating Corp.v. 125 East Taverns, Inc. (In re BSL Operating Corp.)*, 57 B.R. 945, 947 (Bankr. S.D.N.Y. 1986). The failure of a corporate debtor like 167 West 133rd Street HPDC to retain counsel, is grounds under § 1112(b)(2) to dismiss or convert its case. *In re Spencer C. Young Invs.*, No. 08-81852, 2009 WL 901654, *3 (Bankr. M.D.N.C. Feb. 4, 2009) (dismissing a *pro se* corporate debtor's case for, among other reasons, failure to obtain counsel); *In re Child Life, Inc.*, 126 B.R. 51, 52 (Bankr. N.D. Oh. Mar. 26, 1991) (dismissing a chapter 11 case of a corporate entity because it failed to obtain counsel).

[10]    Local Bankruptcy Rule 1007-2 mandates that a debtor file an affidavit with its petition that sets forth, among other things, the nature of the debtor's business and circumstances leading to the debtor's filing under chapter 11, the names and addresses of the debtor's twenty largest unsecured creditors and five largest secured creditors, a list of the debtor's assets, and the nature and status of any pending litigation against the debtor. The Debtor's failure to do so is additional cause to dismiss under section 1112(b)(4)(F) of the Bankruptcy Code. Further, the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "Operating Guidelines") promulgated by the Office of the United States Trustee, require a debtor to produce the documents set forth in the Operating Guidelines, such as proof of insurance and opening of a debtor-in-possession bank account, within fifteen days of filing the petition. *See* Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, U.S. DEPARTMENT OF JUSTICE OFFICE OF THE UNITED STATES TRUSTEE (September 24, 2018, 2:00 PM), https://www.justice.gov/ust-regions-r02/region-2-general-information. To date, the Debtor has not provided the United States Trustee with any of the documents called for under the Operating Guidelines. The failure to maintain appropriate insurance is cause for the conversion or dismissal of the Debtor's case. 11 U.S.C. § 1112(b)(4)(C); *see also Derivium Capital LLC v. U.S. Trustee (In re Derivium Capital LLC)*, No. 5 Civ. 10845, 2006 WL 1317021, *11 (S.D.N.Y. May 12, 2006) (affirming the bankruptcy court's decision to convert a chapter 11 case partially because the debtor lacked proper insurance coverage); *In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010) (finding that cause existed in part, because the debtor failed to show that there was insurance on residential property he owed.).

[11]    The Movants argue that the Court cannot give Ms. Smith relief from the preliminary injunction because it is bound by, and must give effect to, the State Court's preliminary injunction. In relevant part, the full faith and credit statute states, as follows:

that this Court should dismiss the case because Ms. Smith lacked the authority to file it and, in

any event, she filed the case in bad faith. *Id*. ¶¶ 25-40.  As explained below, the Court finds

merit to both assertions, and that both provide grounds for relief under § 1112(b) of the

Bankruptcy Code.

<u>Discussion</u>

---

[The records of state judicial proceedings] shall have the same full faith and credit in every court
with the United States and its Territories and Possessions as they have by law or usage in the courts
of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.  That means that this Court must give the State Court preliminary injunction the same preclusive
effect it would have in the State Court.  *See Taub v. Morris (In re Morris)*, 252 B.R. 41, 47 (Bankr. S.D.N.Y. 2000);
*Nissan v. Weiss (In re Weiss)*, 235 B.R. 349, 354 (Bankr. S.D.N.Y. 1999).  A preliminary injunction is, "by its very
nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive,
characterized by its for-the-time-beingness."  *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 742 (1953).
In that way, "[i]t serves as an equitable policing measure to prevent the parties from harming one another during the
litigation; to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied
when the suit began."  *Id.*; *see also J.A. Preston Corp. v. Fabrication Enters., Inc.*, 68 N.Y.2d 397, 406, 502 N.E.2d
197, 201 (1986) (noting that "[a] preliminary injunction, even when issued after an evidentiary hearing, depends on
probabilities, any or all of which may be disproven when the action is tried on the merits, and the affirmance of an
order granting a preliminary injunction determines no more than that the discretion exercised in favor of granting the
order was not based upon a demonstration of those probabilities so insufficient as to constitute an abuse of
discretion.").  Thus, under New York law, preliminary injunctions are not final decisions entitled to preclusive effect
in subsequent actions.  For that reason, this Court is not barred from considering the issues raised by Ms. Smith (that
the State Court considered) regarding her authority to file the Petition.  In arguing that this Court is bound to enforce
the preliminary injunction, the Movants misplace their reliance on *Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir.
1994).  There, a chapter 11 debtor sought an order of the bankruptcy court authorizing it to sell its real property free
and clear of a restrictive covenant in its title to the property.  Prior to the commencement of its bankruptcy case, the
debtor had unsuccessfully litigated that issue in state court.  *Id.* at 297.  Ultimately, the state court issued a
permanent injunction enjoining the debtor from developing her real property in violation of the disputed covenant.
*Id.*  The bankruptcy court rejected the debtor's assertion that by application of §§ 363 and 105 of the Bankruptcy
Code, it could order the sale of the property free and clear of the restrictive covenant.  *Id.* at 298.  On appeal, the
Seventh Circuit Court of Appeals affirmed the bankruptcy court.  As relevant to this case, the court held that a
bankruptcy court's exercise of its authority under § 105(a), was "subject to the Full Faith and Credit Clause of the
Constitution," and that the court "must afford full faith and credit to a valid state court judgment to the same extent
as the rendering state."  *Id.* at 300.  In effect, the court found that since the state court judgment was a final
judgment, the bankruptcy court properly found that it lacked the power to set aside the valid, permanent injunction
issued by the state court.  *Id.* at 301.  Here, the State Court issued a preliminary injunction, and not a permanent
injunction.  As such, *Gouveia* is inapposite to this case.

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a case under chapter 11.  It states, in part, that:

> the court shall convert a case under this chapter to a case under chapter 7 or dismiss case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  Subsection (b)(4) sets forth sixteen, non-exclusive examples of "cause" for relief under § 1112(b).  *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997).  The factors enumerated in § 1112(b)(4) are merely examples of "cause" under the statute, they are "'not exhaustive' and courts are free to consider other factors."  *See In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (citing *In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009)).  *See also In re TCR of Denver, LLC*, 338 B.R. 494, 500 (Bankr. D. Colo. 2006) (noting that "the Court may dismiss a Chapter 11 case for reasons other than those specified in section 1112(b) as long as those reasons satisfy 'cause'").

Whether Ms. Smith Lacked Authority To File The Petition

The Movants contend that Ms. Smith lacked authority to file the Petition because she is not a member of the Debtor's Board and, under the By-Laws, only directors can authorize the Debtor to file a bankruptcy petition.  Mot. ¶ 25.  It is settled that the lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for "cause" for relief under § 1112(b) of the Bankruptcy Code.  *See In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014) ("In addition to 'cause' under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation.") (citing *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513 (1945)); *In re ComScape*

- 11 -

*Telecomm., Inc.*, 423 B.R. 816, 829 (Bankr. S.D. Ohio 2010) ("It is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal.") (citing *In re A-Z Elec., LLC*, 350 B.R. 886, 891 (Bankr. D. Idaho 2006)).  The Movants bear the burden of establishing that Ms. Smith lacked the authority to file the bankruptcy petition on behalf of the Debtor.  *See In re Quad-C Funding LLC*, 496 B.R. 135, 141-42 (Bankr. S.D.N.Y. 2013) (holding that on a motion to dismiss, the movant bears the burden of proof even where movant contends that the voluntary bankruptcy petition was filed by someone lacking the authority to do so.).  As will be explained, they have met that burden.

State law governs a Debtor's authority to file a voluntary petition in bankruptcy.  *See In re Quad–C Funding LLC*, 496 B.R. at 141 ("[T]he Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief.  In order to determine authority to file, courts initially look to the state law governing the entity.") (citations omitted); *In re Am. Globus Corp*., 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) ("[t]he authority to file a bankruptcy petition on behalf of a corporation must derive from state law.") (citation omitted). PHFL § 573 provides the requirements for the certificate of incorporation of a "housing development fund corporation," such as the Debtor.  In part, it states that such a corporation "shall be incorporated pursuant to the provisions of this article and the provisions of either (a) the business corporations law, (b) the not-for-profit corporation law, or (c) the not-for-profit corporation law and article two of this chapter."  PHFL § 573(1).  The Debtor is incorporated under the Business Corporation Law.  *See* Certificate of Incorporation § 1.  As a general proposition, "the business of a corporation shall be managed under the direction of its board of directors . . .[.]"  N.Y. Bus. Corp. L. § 701 (McKinney 2018).  Officers, "as between themselves and the corporation shall have such authority and perform such duties in the management of the

- 12 -

corporation as may be provided in the by-laws or, to the extent not so provided, by the board."

*Id.* at § 715(g); *see also id.* at § 601(b) (a corporation's by-laws "may contain any provision

relating to the business of the corporation, the conduct of its affairs, its rights or powers or the

rights or powers of its shareholders, directors or officers, not inconsistent with this chapter or any

other statute of this state or the certificate of incorporation.").

      In assessing whether Ms. Smith was authorized to file the Petition, the Court reviews the

Certificate of Incorporation and By-Laws.  "[A] company's certificate of incorporation and by-

laws in substance are a contract between the corporation and its shareholders and among the

shareholders *inter se*."  *Mgmt. Techs., Inc. v. Morris*, 961 F. Supp. 640, 646 (S.D.N.Y. 1997)

(citing *Am. Globus Corp.*, 195 B.R. at 265); *ALH Properties Ten, Inc. v. 306-100th St. Owners

Corp.*, 191 A.D.2d 1, 16, 600 N.Y.S.2d 443 [1st Dept 1993] ("The bylaws of the corporation

constitute a contract between the shareholders and the corporation.") (citation omitted), *aff'd as

modified*, 86 N.Y.2d 643, 658 N.E.2d 1034 (1995).  "The parties' rights [under the by-laws] must

be adjudicated according to the unambiguous terms thereof and the words and phrases therein

must be given their plain meaning."  *Id.* at 16, 600 N.Y.S.2d at 453.  Pursuant to the By-Laws,

Board actions must be approved by a majority of directors present at a meeting of the Board that

is scheduled at a time determined either by a majority of the Board, or its President, and is

convened by a majority of the Board's members, constituting a quorum.  *See* By-Laws, Art. VIII

§§ 7-8, 10.  Only officers can execute corporate documents, and only with the prior authorization

of the Board.  *Id.* at Art. IV § 1.  The evidence demonstrates that on the Petition Date, Ms. Smith

was neither a corporate officer, nor a Board member.

      There is no dispute that as of February 4, 2016, Ms. Smith was acting as the Secretary-

Treasurer of the Board.  In an email sent that day (the "February 4 email"), Ms. Smith advised

- 13 -

Cheryl Tidwell, a representative from UHAB, that she had "decided not to serve as an officer on

67 W. 133 Street HDFC [sic] board in the future from this day on."  2017 Perez Aff., Ex. G

(February 4 email).  The By-Laws provide that a director may "resign at any time by delivering a

signed letter of resignation to the office of the Corporation.  Such resignation shall take effect at

the time specified in that letter or, if not so specified, on the date the letter is delivered."  By-

Laws, Art. VIII § 4.  Ms. Smith does not dispute that her February 4 email was directed to the

"office of the Corporation."  However, she: (i) insinuates that she did not draft the February 4

email (Opp'n ¶ 26); (ii) denies that the email constitutes a formal resignation from the Board

(*id*.); (iii) denies that she signed the email (*id*.); and (iv) contends that the email did not contain

an "electronic signature" for purposes of § 302 of the Electronic Signatures & Records Act and

State Technology Law ("ESRA"), because when she affixed her name to the email, she did not

intend to sign the email.  *Id.* ¶ 27.[12]  The Court finds no merit to those contentions.  Ms. Smith

adduced no evidence to call into question the authenticity of the February 4 email.  That email is

part of a long chain of emails among Ms. Smith, Ms. Tidwell, Perez, and others, and Ms. Smith

does not challenge the authenticity of any other part of that record.  Next, Ms. Smith's

contentions notwithstanding, her actions after she sent the February 4 email are consistent with

those of a director who has resigned from the Board.  After she sent the email, Ms. Smith

allegedly "refused to help schedule or attend Board meetings [and] rebuffed every attempt that

the UHAB made to create an action plan to help the shareholders[.]"  2017 Perez Aff. ¶ 20.

Moreover, Ms. Smith does not deny that after she sent the email, she refused to help schedule or

attend the meetings of the Board as the Board's secretary is required to under the By-Laws.[13]  *Id.*

---

[12]    Section 302(2) of the ESRA defines the term "Electronic Signature" to mean "an electronic sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record."  N.Y. State Tech. Law § 304(2) (McKinney 2018).

- 14 -

The Court finds that Ms. Smith intended to resign from the Board when she sent the February 4 email. Ms. Smith does not deny that a signed email constitutes a "writing" within the meaning of the statute of frauds. *See, e.g., Steven v. Publicis, S.A.*, 50 A.D.3d 253, 256, 854 N.Y.S. 2d 690 [1st Dept 2008] ("The e-mails from plaintiff constitute 'signed writings' within the meaning of the statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the contents[.]") (citation omitted); *Williamson v. Delsener*, 59 A.D.3d 291, 874 N.Y.S.2d 41 [1st Dept 2009] ("The e-mails exchanged between counsel, which contained their printed names at the end, constitute signed writings . . . within the meaning of the statute of frauds."). The Court finds no merit to her assertion that she did not intend her typed name to be her electronic signature.

Even if the February 4 email cannot be construed as a signed letter of resignation from the Board, Ms. Smith was removed from the Board by operation of the By-Laws in February of 2016. As relevant, the By-Laws provide that "[t]he term of any Director who becomes more than two (2) months behind in payment of his or her maintenance charges shall be automatically terminated and a replacement shall be duly elected." By-Laws, Art. VIII § 5. The Tenant Ledger shows that Ms. Smith failed to make her mandatory monthly maintenance payments to the Debtor for the months of December 2015 and January 2016, and made partial payment for the month of February 2016. *See* Perez Aff., Ex. I (the "Tenant Ledger"). Ms. Smith does not deny that she failed to make those payments. She contends that she withheld payments in protest of the legal fees assessed against her for nonpayment of the maintenance fees. Opp'n ¶ 28.

---

[13]    The By-Laws provide that the "Secretary Shall: keep the minutes of all meetings of the Board and all meetings of the shareholders of the Corporation; give notice of all meetings of shareholders and directors; have custody of the seal of the Corporation, the record of the shares, proprietary leases, and such other books and papers as the Board may direct; and, in general, perform all duties incident to the office of Secretary." By-Laws, Art. IX § 6.

- 15 -

However, the By-Laws do not give Board members the option of withholding payment of

maintenance fees.  Moreover, Ms. Smith's failure to pay those fees was not an isolated event.

The Tenant Ledger shows that Ms. Smith failed to pay maintenance fees during the three-month

period of March, April, and May 2016, and for the period of May, June, July and August 2018.

*See* Tenant Ledger.  There is no evidence that Ms. Smith rejoined the Board, let alone as a Board

officer, at any time after her removal in February 2016.  As of the Petition Date, and by

operation of Art. VIII § 5 of the By-Laws, Ms. Smith had forfeited her position as "Secretary-

Treasurer" and a member of the Board.  She lacked authority to act on behalf of the Debtor.

Accordingly, the Movants have established "cause" under § 1112(b) of the Bankruptcy Code to

dismiss the case.  *See In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 860-61 (Bankr. N.D. Ill.

2014) (dismissing chapter 11 case for cause pursuant to section 1112(b) where undisputed

documents demonstrated "more probably than not that [filer of the petition] was not authorized

by its many members to file for bankruptcy," and the "putative debtor[]" did not carry its burden

in rebutting that evidence.); *In re Pasta Bar By Scotto II, LLC*, No. 15-12766, 2015 WL

7307246, at *3 (Bankr. S.D.N.Y. Nov. 19, 2015) (dismissing chapter 11 case where member of

debtor filed the bankruptcy petition without obtaining the consent of the other members in a

supermajority vote, as required by the debtor's operating agreement.).


Whether Ms. Smith Filed The Petition In Bad Faith

Alternatively, the Movants argue that the case should be dismissed because Ms. Smith

commenced it in bad faith.  Although "bad faith" is not among the examples of "cause" listed in

§ 1112(b)(4), "[i]t is well-settled that the filing of a bankruptcy petition in bad faith constitutes

'cause' for dismissal or conversion of a case under the Bankruptcy Code section 1112(b)." *In re*

*Ancona*, No. 14-10532, 2016 WL 7868696, at *3 (Bankr. S.D.N.Y. Nov. 30, 2016) (citing *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir. 1997)); *see also In re Adler*, 329 B.R. 406, 410 (Bankr. S.D.N.Y. 2005) (holding that a "[c]ourt may find cause for dismissal if there has been a lack of good faith."). The rationale for dismissing a case filed in bad faith "is that if the petition is not filed in good faith, it is an abuse of the judicial process or of the jurisdiction of the bankruptcy court." *In re Kingston Square Assocs.*, 214 B.R. 713, 724 (Bankr. S.D.N.Y. 1997) (citations omitted).

In this Circuit, a bankruptcy petition will be found to have been filed in bad faith, "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991); *accord In re Gen. Growth Props., Inc*., 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (noting that "[t]he standard in this Circuit is that a bankruptcy petition will be dismissed if *both* objective futility of the reorganization process *and* subjective bad faith in filing the petition are found.") (citations omitted). The moving party bears the burden of establishing "cause" under § 1112(b). *See In re Adbrite Corp.,* 290 B.R. 209, 214 (Bankr. S.D.N.Y. 2003); *In re Pulp Finish 1 Co*., 12-13774, 2013 WL 5487933, at *1 (Bankr. S.D.N.Y. October 2, 2013). "Once the movant has met both the objective and subjective prongs, a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good and sufficient reasons why the relief should not be granted.'" *Squires Motel, LLC v. Gance (Squires Motel, LLC)*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (quoting *California Mortg. Serv. v. Yukon Enters., Inc. (In re Yukon Enter., Inc.)*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)). That is to say that the "debtor must

- 17 -

demonstrate that 'unusual circumstances' exist establishing that 'dismissal is not in the best interests of creditors and the estate.'" *Id*. at 35 (quoting 11 U.S.C. §§ 1112(b)(1)-(2)).

*Objective Futility*

The "objective futility" standard focuses on "whether a reorganization is realistically possible." *Carolin Corp. v. Miller (In re Carolin Corp.)*, 886 F.2d 693, 700 (4th Cir. 1989).  A debtor will fail to satisfy that standard, "[p]articularly when there is no realistic possibility of an effective reorganization . . .[.]"  *In re Albany Partners*, 749 F.2d 670, 674 (11th Cir. 1984).

Ms. Smith contends that she filed the bankruptcy petition on behalf of the Debtor because the Debtor is burdened with approximately $200,000 in debt owed to the City, and the Debtor will employ the bankruptcy process to resolve and satisfy that claim.  Opp'n ¶¶ 15, 18.  More specifically, she says that the Debtor will fund a reorganization plan that will provide for the payment of the City's claim, using the net rental proceeds from the Building, or the proceeds from the sale of a vacant apartment in the Building.  *Id.* ¶¶ 17-18.

But the Debtor is not going to be able to confirm a reorganization plan.  This is essentially a two party case, as the City is the Debtor's only creditor of consequence, and, in any event, the only creditor actively pursuing the Debtor for payment of its claim.[14]  As noted, the City holds a Foreclosure Judgment against the Building.  Pursuant to Admin. Code § 11-412.1(d), there is a four-month period after the entry of a foreclosure judgment during which the property owner, or an interested party, can redeem the property from foreclosure by repaying all the delinquent taxes, or entering into an *in rem* installment agreement (the "Mandatory Period").

---

[14]     Two other taxing authorities have filed *de mininus* claims in the case: (i) New York State Department of Taxation & Finance in the amount of $1,978.94; and (ii) Department of the Treasury Internal Revenue Service in the amount of $1,639.08.  In addition, there is an outstanding water bill in the amount of at least $58,337.32.  2017 Perez Aff. ¶ 30.

If the debtor files its bankruptcy case before the Mandatory Period expires, that period may be extended for 60 days.  11 U.S.C. § 108(b); *see also In re 652 W. 160th LLC.*, 330 B.R. 455, 464 (Bankr. S.D.N.Y. 2005) (holding that "§ 108(b) is the operative provision of the Bankruptcy Code that extends the [mandatory redemption] period for only 60 days.") (citing *Canney v. Merchants Bank (In re Canney)*, 284 F.3d 362, 372-73 (2d Cir. 2002)); *In re Sadie Haynes*, 283 B.R. 147, 156 (Bankr. S.D.N.Y. 2002) ("The Mandatory Period prescribed under 11-412.1(d) is the period during which an individual can exercise her right of redemption.  If a petition is filed while the redemption right is unexpired, the equitable right of redemption becomes a part of the bankruptcy estate. . . .  However, if at the date of filing, the right of redemption has already expired, there is nothing there to be included in the bankruptcy estate and there is no right to be protected under the automatic stay.") (citations omitted).  Upon expiration of the Mandatory Period, §§ 11-412.1(c) and 412.2 of the Admin. Code provide the City four months to transfer the property to a responsible third party retaining the property's status as an affordable housing project, plus a 45-day toll for review of the transfer by the City Council.  The City says that it has the right, in its discretion, to allow the Debtor to redeem the Building after the expiration of the Mandatory Period, at any time up to the time of the foreclosure transfer.  NYC Stmt. ¶ 8.

On the Petition Date, the Mandatory Period was set to expire on July 20, 2018 (i.e. four months after entry of the Foreclosure Judgment).  The City does not dispute that pursuant to § 108(b) of the Bankruptcy Code, upon the commencement of the case, the Mandatory Period was extended to August 31, 2018.  *Id.* ¶ 6.  The City's position is that now that the Mandatory Period has lapsed, it has four months to transfer the Property, plus a 45-day toll for review by the City Council.  *Id.* ¶ 7.  The City advises that it has elected to transfer the Property to a responsible owner, under a regulatory agreement with the HPD, through its "Third Party Transfer Program."

- 19 -

*Id.*  Nonetheless, the City says that even after expiration of the Mandatory Period, HPD has the right, in its discretion, up to the time of the foreclosure transfer, to permit the Debtor to redeem the Property.  *Id.*

The Debtor's goal is to redeem the Property.  To do so, the Debtor must first raise the funds needed to pay-off the delinquent property taxes owed to the City.  HSC has determined that based on the rent roll, the Debtor owns five vacant units and generates monthly income of $12,041 from the Building's occupied units.  2017 Perez Aff. ¶ 14; Reply Decl. ¶ 4.  According to HSC, interested buyers have submitted applications to purchase three of the five vacant apartments from the Debtor at the prices of $125,000, $200,000, and $160,000.  Reply Decl. ¶¶ 4-6.  The Movants assert that if this case is dismissed, the Debtor will be able to sell the apartments and use the net sale proceeds to redeem the Property.  They say that they will not be able to redeem the Property if the case is not dismissed.  The prospective purchasers of the apartments have advised HSC that they will not be able to obtain the financing they require to purchase the apartments so long as the Debtor remains in bankruptcy.  *See id.* ¶¶ 6-9.  The Movants also contend that HSC is confident that, if the Debtor obtains the funds necessary to pay-off the tax bill, the Debtor will be permitted to redeem the Property.

The "objective futility" standard focuses on "whether a reorganization is realistically possible."  *In re Carolin Corp.*, 886 F.2d 693, 700 (4th Cir. 1989).  A debtor will fail to satisfy that standard, "[p]articularly when there is no realistic possibility of an effective reorganization . . .[.]"  *In re Albany Partners*, 749 F.2d 670, 674 (11th Cir. 1984); *Adirondack Mines, Inc. v. U.S. Tr.*, No. 1:10-CV-411, 2010 WL 4781529, at *3 (N.D.N.Y. Nov. 16, 2010) (finding objective futility where the debtor owned a single piece of real estate, had no employees and few unsecured creditors, and could not demonstrate that it had any commercial operations.); *In re*

- 20 -

*Ridge View Farm, LLC*, No. 11-30463, 2012 WL 6137690, at *9 (Bankr. N.D.N.Y. Dec. 10, 2012) (finding that objective futility requirement was met where the proceeds of the proposed sale were "inadequate to fund a feasible plan as Debtor's uncontested secured debts.").

It is objectively futile for the Debtor to pursue this case because it is best able to redeem the Property outside a bankruptcy case, and if it is successful in doing so, it will not require bankruptcy relief.  Conversely, if the Debtor remains in bankruptcy, it likely will not be able to raise the funds necessary to redeem the Property and, in that case, there would be no reason to prosecute the case because the Debtor's sole asset – the Property – would be lost.  The Court finds that the Movants have demonstrated not only that it is objectively futile for the Debtor to continue to prosecute this case, but that it is not in the Debtor's best interests to do so.

*The Subjective Test*

"The subjective bad faith standard is meant to insure that the Debtor actually intends to use chapter 11 to reorganize and rehabilitate itself and not simply to cause hardship or delay to its creditors by invoking the automatic stay."  *In re RCM Global Long Term Capital Apprec'n Fund, LTD,* 200 B.R. 514, 522 (Bankr. S.D.N.Y. 1996).  "Debtors rarely admit to their own bad faith[,]" *In re Reyes*, No. 14-13233, 2015 WL 4624156, at *5 (Bankr. S.D.N.Y. Aug. 4, 2015) (citing *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1304 (2d Cir. 1997)), and Ms. Smith has not done so here.  To the contrary, she insists that she filed this case in good faith.  In *C-TC*, the Second Circuit identified eight factors, or "badges" (the "*C-TC Factors*"), the presence of which would be indicative of subjective bad faith:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

- 21 -

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*See* 113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)).

In considering the application of the *C-TC Factors* in this case, the Court will not engage in a "mechanical counting exercise," *see In re Century/ML Cable Venture*, 294 B.R. 9, 35 (Bankr. S.D.N.Y. 2003), and may consider "any or all" of them. *See In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). It will not consider the factors in isolation, since "a determination of bad faith requires a full examination of all the circumstances of the case." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312. In the final analysis, the Court has broad discretion in determining whether the Movants have established bad faith. *See generally Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (stating "a dismissal for bad faith, which involves a bankruptcy court's exercise of equitable discretion, is reviewed for abuse of discretion.") (citing *First Conn. Consulting Grp, Inc. v. Mocco (In re First Conn. Consulting Grp, Inc.)*, 254 Fed. Appx. 64, 68 (2d Cir. 2007)); *In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. at

359 (noting that the decision to grant or deny a dismissal or conversion motion under section

1112(b) is within the sound discretion of the bankruptcy court) (citations omitted).

Application of the *C-TC Factors* supports the conclusion that Ms. Smith filed this case in

bad faith.  The Debtor has only one asset and it is the subject of the Foreclosure Judgement.  It

has no employees, and few unsecured creditors whose claims are dwarfed by the City's claim.

Its financial condition essentially is a two party dispute between the City and the Debtor that will

be resolved in accordance with the procedures under the Administrative Code.  The Debtor has

some cash flow, but it is insufficient to underwrite the cost of redeeming the Property.

Moreover, it is plain that the entry of the State Court Decision and the issuance of the

preliminary injunction in June 2018, not the entry of the Foreclosure Judgment almost three

months earlier, precipitated the filing of this case.  Ms. Smith's forum shopping likewise

evidences her bad faith in filing this case.

The Movants have established both objective and subjective bad faith on the part of Ms.

Smith in filing this case.  With that, there is a rebuttable presumption of bad faith on her part in

filing the Petition.  *See In re Valid Value Props.*, *LLC*, No. 16-13299, 2017 WL 123751, at *6

(Bankr. S.D.N.Y. Jan. 5, 2017) ("In other words, the debtor must demonstrate the existence of

'unusual circumstances' that establish that 'dismissal is not in the best interests of creditors and

the estate.'") (quoting 11 U.S.C. §§ 1112(b)(1)-(2)).  She has not rebutted that presumption.

Thus the Movants have established Ms. Smith's bad faith in filing this case and with that,

additional grounds for relief under § 1112(b) of the Bankruptcy Code.  *See id.*

## Conclusion

This Court has wide discretion to determine if cause exists to grant relief under §

1112(b), and, if so, how to dispose of the case.  *See In re Gucci*, 174 B.R. 401, 404 (Bankr.

S.D.N.Y. 1994); *see also In re Coffee Cupboard, Inc.*, 119 B.R. 14, 18 (E.D.N.Y. 1990).  Based

on the foregoing, the Court finds that the Movants have established cause for relief under §

1112(b) because Ms. Smith lacked the authority to file the Petition and because, in any event, she

filed it in bad faith.  Moreover, the Court finds that there is no purpose in converting this case to

one under chapter 7 of the Bankruptcy Code, as there will be neither assets nor a business for a

chapter 7 trustee to administer.  Rather, the Court finds that it is in the best interests of the

Debtor and its estate to dismiss the case.  Accordingly, the Motion is GRANTED, and the case is

dismissed.


IT IS SO ORDERED.


Dated: New York, New York
       September 25, 2018

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

- 24 -